IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID ANDERSON,<br><br>          Plaintiff,<br><br>   v.<br><br>VENANGO COUNTY, PENNSYLVANIA,<br>and JAMES CARBONE,<br><br>          Defendants. | C.A. No. 10-79 Erie<br>Judge McLaughlin |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

Presently pending before the Court is Defendant James Carbone's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons which follow, the motion will be granted.

### I. BACKGROUND

On or about March 2000, Plaintiff David Anderson ("Anderson") was charged in Venango County, Pennsylvania with several counts of indecent assault and involuntary deviate sexual intercourse based upon allegations that he had engaged in improper sexual relations with three mentally-handicapped patients at Polk Center State Hospital, where Anderson was employed at the time. (Complaint ¶ 8). The first trial concerning these charges took place in February, 2001. (Complaint ¶ 9). At the conclusion of the first trial, the jury found Anderson guilty of indecent assault with respect to one patient, but deadlocked as to the charges concerning the other two patients. (Complaint ¶ 10).

1

In September 2001, Anderson was tried for a second time with respect to the charges on which the first jury had previously deadlocked. Defendant James Carbone ("Carbone") prosecuted the case on behalf of Defendant Venango County, Pennsylvania ("Venango County"). (Complaint ¶ 12). At the conclusion of the second trial, the jury found Anderson guilty of indecent assault with respect to both patients and involuntary deviant sexual intercourse with respect to one of the patients. (Complaint ¶ 11).

Anderson successfully appealed the results of both trials. The Superior Court reversed the February 2001 conviction on procedural grounds and reversed the September 2001 conviction after concluding that Defendant Carbone had engaged in outrageous behavior during closing arguments. (Compliant ¶ 12).

On remand, Anderson was charged again in relation to the two patients involved in the September 2001 trial. Renewed charges were not pursued with respect to the patient at issue in the February 2001 trial. (Complaint ¶ 13).

Prior to trial, the Court of Common Pleas ruled that neither of the patients that Anderson allegedly victimized were competent to testify. This ruling was reversed by the Superior Court based on a finding that the Court of Common Pleas had applied an incorrect standard for competency. Shortly thereafter, Anderson's counsel filed a Motion for Competency Hearing based upon an allegation that Defendant Carbone was improperly coaching and preparing the patient victims for their testimony. (Complaint ¶ 16). A Competency Hearing and Pre-Trial Conference were scheduled for October 29, 2007. However, Defendant Carbone failed to produce the witnesses due to an alleged misunderstanding as to the scheduling order. (Complaint ¶ 18(a)). In the course of rescheduling the Competency Hearing, and in light of the allegations of improper coaching by Defendant Carbone, the court ordered Carbone not to meet with either of the witnesses without a third-party present and to keep a log listing the date and time of any such meetings. (Complaint ¶ 19). The court also ordered Carbone to provide defense counsel with any

capacity assessments of the patients that had been performed by Polk Center. (Complaint ¶ 19).

The Competency Hearing was ultimately held on June 6, 2008. With regards to this Competency Hearing, Anderson alleges that the following acts by Carbone deprived him of his right to a fair trial:

> a. Defendant Carbone met with one of the witnesses six days prior to the competency hearing, informed the witness of the questions that would be asked at the hearing and gave the witness the answers to those questions. This visit was not logged;
>
> b. Defendant Carbone met with the same witness immediately prior to the competency hearing and again provided the questions that were going to be asked during the hearing and the answers thereto. This meeting was logged inaccurately;
>
> c. During the Competency Hearing, Defendant Carbone did, in fact, ask the witness the questions he had provided to the witness during the meetings before the hearing and the prior week;
>
> d. Defendant Carbone repeatedly, intentionally and actively attempted to conceal his meeting with the witness from the Court by initially denying that any meeting occurred and then by stating that he had only seen the witness long enough to deliver a subpoena when he had, in fact, visited with the witness for the duration of a hockey game;
>
> e. Although capacity assessments conducted on the proposed witnesses had been conducted following the October 29, 2007 hearing, Defendant Carbone did not provide those assessments to defense counsel;
>
> f. On July 31, 2008, during a hearing concerning, inter alia, the defense's motion to dismiss, Defendant Carbone attempted to conceal his misconduct by lying concerning his meetings with the witness, accusing defense counsel of lying and of being a bigot against the mentally disabled and inferring that the Superior Court justices who had previously reversed Plaintiff's convictions based on Defendant Carbone's misconduct had acted with impropriety and had been influenced by a relationship with the defense counsel.

(Complaint ¶ 21).

Thereafter, Anderson filed a motion to dismiss the charges against him based upon Carbone's alleged improper conduct. On February 6, 2009, the Court of Common Pleas granted Anderson's motion to dismiss on the grounds that Carbone's misconduct had

violated Anderson's Double Jeopardy protections under the Pennsylvania Constitution. (Complaint, Ex. 1). This ruling is still the subject of an appeal in state court.[1]

On April 2, 2010, Anderson filed the instant civil rights action seeking monetary damages based upon the allegedly improper actions taken by Carbone. Count I of the Complaint, brought pursuant to 42 U.S.C. § 1983, asserts that Defendant Carbone intentionally deprived Anderson of his right to a fair trial and that Defendant Venango County failed to properly train Carbone and/or implemented a policy and practice of improperly coaching and preparing witnesses for competency hearings. Count II raises a claim for abuse of process against Defendant Carbone in his individual capacity based upon Carbone's alleged deprivation of Anderson's right to a fair trial.

Oral argument on Carbone's Motion to Dismiss was held on December 17, 2010. This matter is ripe for review.

## II. STANDARD FOR REVIEW

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, ___ U.S. ___, ___ 127 S.Ct. 2197, 2200 (2007); Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim.

---

[1] On October 22, 2010, the Pennsylvania Superior Court reversed the trial court's order dismissing Anderson's prosecution on double jeopardy grounds. On January 6, 2011, the Superior Court granted Anderson's Petition for *En Banc* Reargument and withdrew the October 22 order. As of this date, the matter is still pending.

Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3rd Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3rd Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3rd Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974.

In other words, at the motion to dismiss stage, a plaintiff is "required to makes a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469 (February 22, 2008) (quoting Phillips v. County of Allegheny, ___ F.3d ___, 2008 WL 305025, at *5 (3rd Cir. Feb. 5, 2008)). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 2008 WL 305025, at *6 (quoting Twombly, ___ U.S. at ___, 127 S.Ct. at 1965 n.3).

## III. ANALYSIS

As set forth above, Anderson asserts that Defendant Carbone's actions during the course of Anderson's criminal prosecution deprived him of his constitutional right to a fair trial. However, as a general matter, prosecuting attorneys are absolutely immune from suits for damages under § 1983 based on activities that are "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). Absolute immunity extends to both "activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior 'intimately associated with the judicial phases' of litigation." Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3rd Cir. 1992) (quoting Imbler, 424 U.S. at 430). In contrast, actions taken by a prosecutor "in an investigative or administrative capacity" are protected only by qualified immunity.[2] Id.

In determining whether absolute immunity is applicable to particular actions, courts must engage in a "functional" analysis of each alleged activity. See Giuffre v. Bissell, 31 F.3d 1241, 1251 (3rd Cir. 1994) (citing Harlow v. Fitzgerald, 457 U.S. 800, 811 (1982)). This approach requires a court to look to "the nature of the function performed" by the prosecutor at the time of the alleged act in order to determine whether it occurred "in his role as advocate for the State." Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993). As explained by the Supreme Court:

> [A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police

---

[2] The parties agree that Anderson's § 1983 claim and his state law abuse of process claim are both governed by the same absolute immunity analysis. (See Plaintiff's Brief in Opposition, p. 10; Defendant's Reply, p. 7); See also Imbler, 424 U.S. at 423 (holding that an assistant to the Attorney General of the United States is "immune from a civil action for malicious prosecution" sought "in the performance of the duties imposed upon him by law . . ."); Durham v. McElynn, 772 A.2d 68 (Pa. 2001).

> and appropriate preparation for its presentation at trial or before
> a grand jury after a decision to seek indictment has been made.

Id. at 272-73. Moreover, even "malicious or dishonest action" by a prosecutor is entitled to absolute immunity so long as the action is part of the judicial process. Imbler, 424 U.S. at 430-32 (holding that a prosecutor enjoys absolute immunity from a suit alleging that he maliciously initiated a prosecution, used perjured testimony at trial, or suppressed material evidence at trial).

Here, the allegations against Carbone include that he improperly coached mentally handicapped witnesses on multiple occasions, violated a trial court's order concerning visits with witnesses, failed to provide defense counsel with copies of competency assessments, and attempted to conceal each of the foregoing from the trial court. In Imbler, the Supreme Court held that "an out-of-court 'effort to control the presentation of [a] witness' testimony" was entitled to absolute immunity because it was 'fairly within [the prosecutor's] function as an advocate." Buckley, 509 U.S. at 272-73 (quoting Imbler, 424 U.S. at 430 n. 32)); see also Genzler v. Longanbach, 410 F.3d 630, 639 (9th Cir. 2005) ("The Supreme Court has held that when a witness is being coached at or during a break in trial, the prosecutor is protected by absolute immunity even if he or she is instructing the witness to lie."). Although the line between "quasi-judicial and investigative activity is far from clear," Kulwicki, 969 F.2d at 1465, courts have consistently held that prosecutorial actions taken for the specific purpose of preparing for or advocating during a judicial hearing are entitled to immunity. In Kulwicki, the Third Circuit noted that "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings is absolutely protected," as are "interviews generating evidence to be presented" in a court proceeding. Id. In contrast, actions which are investigative, rather than quasi-judicial, include "pre-filing interactions with the police," "giving probable cause advice," and "directing evidence-gathering." Id.

Anderson does not allege that Carbone improperly met with the two witnesses in order to gather information or evidence for the purpose of determining whether to pursue charges.

Rather, he alleges that Carbone met with the witnesses for purposes of coaching them prior to a hearing in an ongoing criminal prosecution. The preparation and presentation of witnesses at a judicial proceeding is at the very heart of a prosecutor's advocative role. See, e.g., Buckley, 509 U.S. at 272-73 (actions entitled to absolute immunity "include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial . . ."); Williams v. Hartje, 827 F.2d 1203, 1210 (8th Cir. 1987) ("The act of calling witnesses has been held to be intimately associated with the judicial process, and therefore immune even when the prosecutor knows that the testimony of those witnesses will be false.") (citing Hamilton v. Daley, 777 F.2d 1207, 1212-13 (7th Cir. 1985)); Beckett v. Ford, 384 Fed. Appx. 435, 450 (6th Cir. 2010) ("Preparation of witnesses for trial is protected by absolute immunity.").

In Beckett, the plaintiff alleged that the prosecuting attorney "pressured, threatened, and enticed witnesses to lie at [plaintiff's] trial, presented false testimony at that trial, failed to disclose a deal [he] had made with [a witness, Williams]," and conspired to frame plaintiff for a murder. Id. at 451. The Sixth Circuit affirmed the district court's grant of summary judgment in favor of the prosecutor after concluding that his interaction with the witness in preparation for trial was protected by absolute immunity:

> The district court concluded that, in arranging for Williams to testify, and even in failing to correct Williams' testimony, Anderson was acting as an advocate for the state. The district court concluded also that, while it is possible for a prosecutor who engages in a conspiracy to manufacture false evidence not to be acting as an advocate for the state when he does so, in this case Anderson was acting as an advocate for the state, and so was entitled to absolute prosecutorial immunity. The district court was correct: even if Anderson threatened, coerced, or enticed Williams into presenting false testimony, Anderson did so as part of his effort to prosecute Beckett for Cunningham's murder. In other words, . . . Anderson was acting neither as an investigator nor an administrator when he reviewed with Williams what Williams would say on the stand.

Id.

The Second Circuit has similarly determined that absolute immunity protects a prosecutor who allegedly conspired with a police officer to elicit perjured testimony in order to obtain a conviction. Dory v. Ryan, 25 F.3d 81 (2nd Cir. 1994). In Dory, the Court held:

> [A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include, for purposes of this case, allegedly conspiring to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because "[t]he immunity attaches to his function, not to the manner in which he performed it." Barrett v. United States, 798 F.2d 565, 573 (2nd Cir.1986). As much as the idea of a prosecutor conspiring to falsify evidence disturbs us . . . we recognize that there is a greater societal goal in protecting the judicial process by preventing perpetual suits against prosecutors for the performance of their duties. See Imbler, 424 U.S. at 426-428, 96 S.Ct. at 994.

Id. at 83 (internal citations omitted). Similarly, in Williams v. Hartje, the Eighth Circuit concluded that absolute immunity protected a county prosecutor accused of threatening a witness with physical violence in conjunction with his testimony at an upcoming coroner's inquest. The Court held that absolute immunity applied, despite the patently improper nature of the alleged conduct, because the act of interviewing witnesses prior to a hearing was "within the quasi-judicial aspect of the prosecutor's job." Id. at 1210. Each of the foregoing cases supports the proposition that the act of preparing and calling witnesses in conjunction with an ongoing judicial proceeding is a fundamental advocative prosecutorial function that is entitled to absolute immunity.

Anderson argues that a different result is required here because "[t]his action is not based on the mere coaching of a witness, it is about meeting with and coaching that witness in direct violation of a court order." (Plaintiff's Brief in Opposition, p. 8). Citing Reitz v. County of Bucks, 125 F.3d 139 (3rd Cir. 1997), and Odd v. Malone, 538 F.3d 202 (3rd Cir. 2008), Anderson contends that a prosecutor is not entitled to absolute immunity whenever he or she acts in contravention of a court order.

In Reitz, the government seized various personal and real property belonging to the plaintiffs pursuant to state forfeiture laws as part of an arrest and prosecution for drug trafficking. Reitz, 125 F.3d at 142. Following the ensuing forfeiture proceedings, the court ordered certain items of property to be returned to the plaintiffs. When the district attorney allegedly failed to return the property, plaintiffs filed an action pursuant to § 1983. The Third Circuit determined that the actions taken by the prosecutors *during* the civil forfeiture proceedings and the underlying drug trafficking prosecution were protected by absolute immunity. The Court concluded, however, that the prosecutor was not entitled to absolute immunity for any delay in returning the property because that conduct was entirely ministerial. Id. at 146.

In Odd, two reluctant material witnesses were detained by the prosecution pursuant to bench warrants to ensure their testimony at separate murder trials. Odd, 538 F.3d at 205-06. In issuing the warrant for one of the witnesses, the judge explicitly ordered the prosecutor to keep the court apprised as to the proceedings so as to ensure the witness's release in the event of a delay. Id. at 213-14. However, the prosecution failed to inform the court that the witnesses were no longer needed, resulting in their further detention. Each witness filed a § 1983 action against the prosecutor based upon their alleged detention without probable cause. On appeal, the Third Circuit held that absolute immunity did not apply because the prosecution's failure to inform the court that the detainees were no longer necessary was "an administrative oversight" which "had nothing to do with conducting a prosecution for the state." Id. at 215. The Court further noted that it was "loath" to grant absolute immunity in light of the prosecutor's "disobedience" of a court order. Id. at 214.

Contrary to Anderson's contention, neither Reitz nor Odd stands for the proposition that a prosecutor loses the cloak of absolute immunity solely on the basis of disobeying a court order. Rather, in each case, the Third Circuit determined that absolute immunity did not apply because the wrongful acts attributed to the prosecutor were administrative, rather

than advocative. See Reitz, 125 F.3d at 142 (holding that the prosecutor's responsibilities following the conclusion of forfeiture proceedings consisted only of administrative management and disposition of the property); Odd, 538 F.3d at 214-15 (failure to notify the court that detained witnesses were no longer necessary "required no advocacy" and was solely "administrative"). In Hart v. Hodges, the Eleventh Circuit distinguished Odd on this precise basis:

> Hart cites several cases he contends denied absolute immunity because of prosecutors' disobedience of judicial orders. These cases do not stand for the proposition cited . . . For example, in Odd v. Malone, 538 F.3d 202, 213-14 (3rd Cir. 2008), although the defendant prosecutor violated a judicial order to keep the judge informed of any delays in a related criminal case, it was the conclusion that his conduct "was primarily administrative" that drove the Third Circuit's refusal to extend prosecutorial immunity.

Hart, 587 F.3d 1288, 1298-99 n. 11 (11th Cir. 2009).

In Hart, the plaintiff had reached a plea agreement whereby he was to serve 27 months incarceration in federal prison and "no more time . . . under the state sentence than under the federal sentence." Id. at 1291. When federal prison officials decided to release him after only 24 months, Hodges, the prosecutor, lodged a detainer against Hart and requested the state trial court to keep him incarcerated in state prison for the three additional months that his original sentence contemplated. The state trial court overturned the detainer and ordered that "Hart will serve no additional time in any state correctional facility . . ." Id. at 1292. Despite the court's order, Hodges persuaded law enforcement officers to detain Hart upon his release from federal custody and transport him to state prison. In a subsequent § 1983 action brought by Hart, Hodges argued that his actions, although contrary to a judicial order, were protected by absolute immunity. The Eleventh Circuit agreed:

> Hart's argument on appeal relies heavily on his assertion that a prosecutor should be categorically denied absolute immunity if he disobeys a judge's order . . . outside the presence of the judge. This argument, however, misapprehends the functional analysis used in considering absolute immunity. As we repeatedly have stated, the determination of absolute

11

> prosecutorial immunity depends on the nature of the function performed, not whether the prosecutor performed that function incorrectly or even with dishonesty, such as presenting perjured testimony in court.
>
> Hart's argument that conduct violating a judge's order, or more broadly, violating a legal obligation, should not be entitled to absolute immunity is not consistent with the fundamental purpose of absolute immunity. Absolute immunity renders certain public officials completely immune from liability, even when their conduct is wrongful or malicious prosecution. Having absolute immunity in civil damages actions would be of little consequence if it could only be asserted when the defendant prosecutor correctly complied with all his legal obligations, in which case there would be no claim.
>
> Rather, the absolute immunity doctrine has evolved such that even wrongful or malicious acts by prosecutors are allowed to go unredressed in order to prevent a flood of claims against the remainder of prosecutors performing their duties properly. Imbler, 424 U.S. at 426, 96 S.Ct. at 994.

Hart, 587 F.3d at 1298-99 (internal citations omitted). The Court concluded that the prosecutor was entitled to absolute immunity because "[a]ll of Hodges's actions were directly related to and intimately associated with the state trial court's sentence and his role as an advocate regarding the court's sentence." Id. at 1297-98.

Similarly, in Reid v. New Hampshire, 56 F.3d 332 (1st Cir. 1995), the First Circuit considered a § 1983 claim brought by a plaintiff who contended that the prosecutors "with[held] exculpatory evidence in direct violation of trial court orders" and "repeatedly misled the trial court itself throughout the criminal proceedings." Id. at 336. The Court concluded that the trial court's order did not supplant Imbler immunity because the evaluation and assessment of evidence in preparation for trial was a well-established advocative prosecutorial function rather than a "ministerial" act. Id. at 337. See also Webster v. Gibson, 913 F.2d 510, 513-14 (8th Cir. 1990) (affirming absolute immunity for a prosecutor's disregard of a judicial order to file an information or release the defendant because the prosecutor's conduct "related to initiating a prosecution and presenting the state's case").

Unlike in Reitz and Odd, the allegedly improper acts attributed to Carbone directly implicated a core advocative function, the presentation and preparation of witnesses. I share the view expressed by the Court in Hart that a careful reading of Odd reveals that the Third Circuit's denial of absolute immunity was based on its conclusion that the conduct was "primarily administrative" in nature. Hart, 587 F.3d at 1298-99 n. 11. Consequently, I find that Carbone's alleged violation of a court order does not deprive him of the protection of absolute immunity in this case and that Anderson's claims are properly dismissed on this basis.

I further note, that even if absolute immunity did not bar Anderson's claims against Carbone, they are alternatively subject to dismissal on the independent basis that Anderson was never tried following the allegedly improper prosecutorial conduct. To reiterate, Anderson's § 1983 claim is based upon his contention that the improper actions allegedly taken by Carbone violated his Sixth Amendment right to a fair trial.[3] The legal import of the fact that a third trial has not occurred was explored at oral argument:

> The Court: [T]he thing that conceptually I can't get my head around is: How can you be denied a fair trial that never happened? . . . In the absence of a conviction as a result of allegedly improper prosecutorial misconduct, where is the Constitutional tort or harm --
>
> Counsel: Because he is still under the umbrella of prosecutorial prosecution. The Defendants in this case have now said publicly that they intend to prosecute him again for another trial.

---

[3] The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

(Transcript, Oral Hearing, 12/17/10, pp. 17-18). The "umbrella" or threat of prosecution does not represent a constitutional deprivation.

In Hensley v. Carey, 818 F.2d 646 (7th Cir. 1987), for example, the Seventh Circuit affirmed a district court's dismissal of a § 1983 action based upon an allegedly suggestive police lineup where the charges against the plaintiff had been dropped by police prior to trial. Although the plaintiff argued that the improperly suggestive lineup, by itself, formed the basis of a Constitutional violation remediable under § 1983, the Court disagreed:

> The rule against admission of evidence from unnecessarily suggestive lineups is a prophylactic rule designed to protect a core right, that is the right to a fair trial, and it is only the violation of the core right and not the prophylactic rule that should be actionable under § 1983.

Hensley, 818 F.3d at 649. Quoting Cerbone v. County of Winchester, 508 F.Supp. 780 (S.D.N.Y. 1981), the Court further explained:

> The mere failure of a 'show-up' to pass constitutional requirements, without a showing of resulting prejudice, does not establish a constitutional deprivation. The constitutional guarantee against a pretrial confrontation 'that is unnecessarily suggestive and conducive to irreparable mistaken identification' does not exist *in vacuo* but is meaningful only by reference to the right of an accused to a fair trial, of which it is a corollary. No violation of the due process clause occurs unless an improper identification has some prejudicial impact on an accused's defense."

Id. (quoting Cerbone, 508 F.Supp. at 786). It concluded:

> In the present case, Hensley has no claim under § 1983 arising out of his participation in an unduly suggestive lineup since he was not deprived of his right to a fair trial. *He could not possibly have been deprived of his right to a fair trial since he was never tried.*

Id. (emphasis added).

Other courts have consistently reached the same result. See Wiley v. City of Chicago, 2003 WL 187276, *2 (N.D. Ill. 2003) ("Plaintiff does not allege that he was tried for the charges on which he was arrested. In fact . . . he admits that the 'charges were dismissed before trial.' That admission dooms his section 1983 fair trial due process claims

14

. . ."); Sejnoha v. City of Bisbee, 815 F.Supp. 1300 (D. Ariz. 1993) ("Sejnoha could not possibly have been deprived of his right to a fair trial because he was never tried. The evidence obtained through use of the photo lineup was never used against Sejnoha."); Williams v. Reynolds, 2004 WL 1585881 (N.D. Texas 2004) ("The complaint in this [§ 1983] case merely alleges that a witness identified Plaintiff in a one-person show up at the scene of the crime. He alleges no possibility of prejudice at his upcoming trial . . . Therefore, the complaint fails to raise a civil rights violation."). As in each of the foregoing cases, Anderson "could not possibly have been deprived of his right to a fair trial since he was never tried." Hensley, 818 F.2d at 649.

## IV. CONCLUSION

For the reasons stated above, Defendant Carbone's Motion to Dismiss is GRANTED. Defendant Carbone is dismissed from this action.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID ANDERSON,<br><br>Plaintiff,<br>v.<br><br>VENANGO COUNTY, PENNSYLVANIA,<br>and JAMES CARBONE,<br><br>Defendants. | C.A. No. 10-79 Erie<br>Judge McLaughlin |

## **ORDER**

AND NOW, this 18th day of January, 2011, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendants James Carbone's Motion to Dismiss for failure to state a claim is GRANTED. Defendant Carbone is dismissed from this action.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___